[Crim. No. 5577.   Second Dist., Div. One.   July 11, 1956.]

THE PEOPLE, Respondent, v. EDWARD LEE RADER et al., Appellants.

Robert H. Lund for Appellants.

Edmund G. Brown, Attorney General, and Rudolph Pacht, Deputy Attorney General, for Respondent.

DORAN, J.—Appellants, together with Leo Earl Rader, were charged by information with conspiracy to violate sections 211 and 459 of the Penal Code; Counts II and III with the crime of robbery, and Count IV with the crime of armed burglary. Each pleaded not guilty and denied being armed. Earl Rader and William Trussell admitted alleged prior convictions. The jury adjudged appellants guilty of violating section 459 as charged in Count IV. The allegation of being armed was found true. The offense was found to be first degree burglary and the prior conviction against Rader was found true. Neither defendant testified.

As recited in appellants' brief, "At approximately 2:40 A.M. of June 25, 1955, one Charles Severs, a deputy sheriff of Los Angeles County with the assistance of one deputy Stone of Los Angeles County, was making a routine check in the vicinity of 214th and Norwalk Boulevard in Artesia, Los Angeles County. On the southwest corner of the aforementioned intersection, the F & W Market is located. The testimony was given in approximately 10 court days, among which there was as follows:

"Severs testified that he heard the burglar alarm ringing, Stone and he covered the building, Stone going to the front, Severs to the rear of the building. Severs climbed to the roof, found a hole in the roof and some tools lying nearby; he called to Stone to radio for assistance. Severs took a position at the rear of the market and Stone took position in the front of the market. Severs testified that a large sliding type door moved and Edward Rader stepped out. At Severs' request Edward Rader raised his hands and Severs saw a gun fall from his belt onto the ground. Severs asked if anyone was with him and Edward Rader looked over his shoulder and made some remark, 'Come on out,' whereupon Edward Rader stepped to the ground and Trussell followed.

"At approximately 2:45 A.M., on June 25, 1955, Paul McCracken, a deputy sheriff of Los Angeles County and a fellow officer named Bibee, responded to a radio order to and transported them to the Norwalk Station. McCracken testified they took two prisoners into custody (the appellants) and transported them to the Norwalk Station. McCracken

testified that the conversation with Trussell related to 'another crime.' McCracken testified that the conversation with Rader was as follows:

" 'I asked what they were doing in the market and Rader answered, he said they were after the safe and he said if they had known what type of safe it was they wouldn't have gone in.'

"Newton LaFever, a deputy sheriff of Los Angeles County, testified that certain conversations took place. In the first conversation with Edward Rader, Rader said:

" 'Me and Bill Trussell had gone through the roof by means of a brace and bit, boring holes and taking a section out of the roof and crawling between the roof portion and the ceiling portion for some distance over towards the meat counter, and then knocked a hole through the plaster in the ceiling and dropped to the floor of the store.'

"There followed other conversation about where certain items found at the scene of arrest came from."

█ It is contended on appeal that "the court erred in the decision of questions of law during the course of the trial." Appellant then specifies seven errors relating to the trial judge's rulings on objections and motions as to the introduction or exclusion of evidence and also the ruling on a motion for a mistrial as well as the court's ruling on refusing to cite the district attorney for misconduct.

Respondent argues, in reply to appellants' contentions, that "The testimony Appellants contend was admitted erroneously and should have been stricken, could not have prejudiced them. They were not convicted on Counts I, II or III, which have been dismissed. The jury, therefore, was not swayed by this evidence sufficiently to find Appellants guilty on any of the first three counts. If error was committed in admitting or in refusing to strike this testimony, therefore, it was not prejudicial to Appellants as to Counts I, II or III.

█ "As to Count IV, it is unreasonable to believe that any such error, if error there was, could have influenced the jury. Appellants were caught 'red-handed'—coming out of a market, armed, at about 2:45 o'clock A.M. while the burglar alarm was ringing and after holes had been cut in the roof and ceiling. They were carpenters or cabinet-workers by trade and the tools of that trade were found at the scene and apparently used in making the entry. Appellant Rader admitted that Appellants 'were after the safe' and surmised that their tools were 'still on the roof.'

"More positive evidence of guilt is rare indeed. In the light of such evidence it is fantastic to claim that the jury could have found Appellants guilty because it was permitted to consider evidence of crimes not charged, some purportedly committed by Appellants and some purportedly committed by others, or because it was permitted to consider evidence of Appellant Trussell's admitted prior conviction or because it was allowed to consider testimony that Appellants refused to utter a sentence which might have served as a basis for an identification. The other evidence was ample to support the jury's finding.

"That the jury was not swayed by this testimony Appellants claim was prejudicial is evidenced by the fact that the jury did not convict on the counts as to which there was no direct evidence. Indeed, it is at least possible that convictions were not obtained on the first three counts because of the testimony of which Appellants complain. That this testimony could have caused the jury to find Appellants guilty of Count IV, however, is far-fetched and fantastic. The jury would have had to reject the testimony of Officers Severs and McCracken and several other witnesses in order to have acquitted Appellants on that count. In short, it cannot be said that had the jury not had before it the evidence of which Appellants complain, Appellants might not have been found guilty as to Count IV.

"It was the jury's function, of course, to choose between the testimony of said officers, plus all the other evidence tending to prove Appellants' guilt, and the alibi evidence Appellants presented—that they wandered onto the scene out of curiosity and were arrested for no apparent reason."

A review of the record reveals that respondent's argument is abundantly supported by the law and the evidence. The judge's rulings were in no sense prejudicial and so far as the law is concerned were correct.

The judgment and order are therefore affirmed.

White, P. J., and Fourt, J., concurred.